

Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, D.C.  20037

O   +1 202 457 6000
F   +1 202 457 6315
squirepattonboggs.com

Mitchell R. Berger
T   +1 202 457 5601
mitchell.berger@squirepb.com

May 6, 2019

**VIA ECF**

Hon. Eric N. Vitaliano
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:  *Spetner, et al., v. Palestine Investment Bank*, Case Number 1:19-cv-00005 (ENV) (RLM)

Dear Judge Vitaliano:

      We represent Defendant Palestine Investment Bank ("PIB"). Pursuant to Rule III.A of the Court's Individual Motion Practice and Rules and Chief Magistrate Judge Mann's February 14, 2019 Order, we respectfully request a pre-motion conference in advance of PIB's motion to dismiss this action pursuant to Fed. R. Civ. P. 12. We anticipate PIB's motion will be based on the arguments outlined below, but reserve the right to assert additional arguments or defenses based on our ongoing investigation of Plaintiffs' claims.

**I.**    **Summary of the Operative Allegations in the Complaint**

      Plaintiffs are more than 20 families who claim to be victims of 13 separate terrorist acts that occurred in Israel between November 2001 and October 2002 during the Second Intifada. Defendant PIB is a public shareholding company providing banking services to its customers from its main branch in Ramallah and 18 other branches in the Palestinian territories. During the relevant time period, PIB did not have any branches, operations, or correspondent bank accounts in the United States.

      Plaintiffs' operative allegation is that "PIB knowingly provided (a) financial benefits, money and financial services on behalf of the Government of Iraq to families and beneficiaries of terrorists who killed, injured and maimed civilians, or attempted to do so; and (b) thereby also provided material support to Foreign Terrorist Organizations . . . in order to facilitate acts of international terrorism as defined by 18 U.S.C. § 2331" in violation of the Antiterrorism Act (the "ATA"). (ECF No. 1 ("Compl.") ¶ 1.) According to the Complaint, between October 2000 and 2002, more than $9.5 million was transferred by the Government of Iraq to accounts at PIB in the name of Rakad Salem, the leader of the Arab Liberation Front ("ALF"), a branch of the Iraqi Ba'ath Party in the Palestinian territories. (*Id.* ¶¶ 2-3, 11-12.) The Complaint then alleges that these funds were used by ALF and Mr. Salem, at the direction of Saddam Hussein, to "reward" the families of suicide attackers and that "[t]hese rewards incentivized and encouraged potential terrorists to commit attacks and made the attacks substantially more likely to occur." (*Id.* ¶ 4-5.) Based on

47 Offices in 20 Countries

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities.

Please visit squirepattonboggs.com for more information.

Squire Patton Boggs (US) LLP

VIA ECF

Hon. Eric N. Vitaliano
May 6, 2019

these allegations, Plaintiffs attempt to assert claims against PIB for primary liability under 18 U.S.C. § 2339A and for aiding and abetting foreign terrorist organizations ("FTOs") under 18 U.S.C. § 2333(d).

The passage of the 2016 Justice Against Sponsors of Terrorism Act ("JASTA") amendments to the ATA, providing for secondary civil liability (*i.e.*, aiding and abetting), has led to a plethora of claims against financial institutions in the Middle East and around the globe. In most of these actions, financial institutions are alleged to have provided banking services either directly to FTOs or to surrogates of FTOs who carried out terrorist acts that injured American citizens. In this Complaint, however, Plaintiffs seek to apply the statute in a far more attenuated and far-reaching manner. None of PIB's account holders described in the Complaint was an FTO or otherwise U.S.-designated as a terrorist. Further, in August 2004, after the events described in the Complaint, Mr. Salem was acquitted by an Israeli military tribunal of the charge of membership in a terrorist group because ALF had not been designated a terrorist group under Israeli law after 1996. Plaintiffs also do not allege any direct payment was made from PIB accounts to FTOs or terrorists, nor do they allege that PIB took any part in raising funds or administering a program to pay the families of terrorists. The Complaint alleges only that PIB provided banking services to its customer, Mr. Salem, who made the alleged "reward" payments from his PIB accounts to the families of terrorists.

## II.     There is No Personal Jurisdiction over Defendant PIB

There is no basis for general personal jurisdiction against PIB because it is not "essentially at home" in the United States. *Daimler AG v. Bauman*, 571 U.S. 117 (2014); *Waldman v. PLO*, 835 F.3d 317, 331 (2d Cir. 2016). PIB is a Palestinian bank headquartered in Ramallah. (Compl. at ¶¶ 1, 455, 457.) PIB has never even maintained a branch office in the U.S., and the Complaint does not allege as much. (*Id.*)

There also is no basis for specific jurisdiction. For specific jurisdiction, a defendant's suit-related conduct "must create a substantial connection with the forum." *Waldman*, 835 F.3d at 335. In the context of an ATA case against a financial institution, the financial services at issue not only must evidence "repeated use of New York's banking system" but also must serve "as an instrument for accomplishing the alleged wrongs for which the plaintiffs seek redress." *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 171 (2d Cir. 2013). As PIB will establish by affidavit evidence with its motion, it did not process any of the funds at issue in the Complaint through a correspondent bank account in New York. All alleged U.S. dollar transactions by PIB were completed outside of the United States. *Licci*, 732 F.3d at 171 (recognizing that due to the "widespread acceptance and availability of U.S. currency" a bank could have "processed U.S. dollar-denominated wire transfers [. . .] through correspondent accounts anywhere in the world."). Any third-party's use of U.S. bank accounts to acquire the U.S. dollars used in its transactions with PIB would not establish the necessary "relationship between the defendant and the forum [which] must arise out of contacts that the defendant *himself* creates with the forum." *Waldman*, 835 F.3d at 335 (internal quotations and citations omitted). Any such third-party transactions with a U.S. bank would be unilateral activity of that third-party, and thus "insufficient to demonstrate that the use of the account was [a] purposeful" act of PIB. *Cmty. Grp. Inc. v. Stanbic Bank Ltd.*, 2015 U.S. Dist. LEXIS 89904, at *11 (S.D.N.Y. July 10, 2015).

## III.    Several Plaintiffs Fail To Plausibly Allege Standing

The ATA provides that "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue . . . ." 18 U.S.C. § 2333(a).  Eight Plaintiffs (Arie Miller, Chaviva Braun, Yehuda Braun, Yoni Braun, Eliana Braun Peretz, Oriella Braun, Matanya Braun, and Revital Bauer) are alleged to be foreign citizens

Squire Patton Boggs (US) LLP

**VIA ECF**

Hon. Eric N. Vitaliano
May 6, 2019

(Compl. at ¶¶ 58, 181, 183, 187, 371) and not the estate, heir, or survivor of a U.S national (*id*. at ¶¶ 59, 182, 188, 376). The plain text of the ATA requires dismissal of these Plaintiffs' claims. *See also Miller v. Arab Bank, PLC*, 2019 U.S. Dist. LEXIS 38588, at *11 (E.D.N.Y. Mar. 11, 2019).

### IV. The Complaint Fails to State a Claim for Primary Liability under the ATA

For primary liability, the defendant's wrongful conduct (predicate act) must be in material support of a criminal terrorist act and such support must itself constitute "an act of international terrorism." *Linde v. Arab Bank, PLC*, 882 F.3d 314, 326-327 (2d Cir. 2018). Also, when the predicate act is alleged under 18 U.S.C. § 2339A, as here, "the defendant must have known or intended that [its] support would be used in preparation for, or in carrying out" the alleged underlying terrorist act. *Ayda Husam Ahmad v. Christian Friends of Israeli Cmtys.*, 2014 U.S. Dist. LEXIS 62053 (S.D.N.Y. May 5, 2014), *aff'd,* 600 Fed. Appx. 800 (2d Cir. Apr. 22, 2015). A plaintiff also must plausibly contend, beyond conclusory allegations, that the defendant's material support was the proximate cause of plaintiff's alleged injury. *Rothstein v. UBS*, 708 F.3d 82, 96-97 (2d Cir. 2013). Plaintiffs allege PIB provided material support to terrorists by "funneling illicit Iraqi payments in U.S. denominated funds through New York to the Palestinian Territories and making those funds available to the families of suicide terrorists." (Compl. at ¶ 562). However, the Complaint only alleges that PIB processed transfers at Mr. Salem's request. It includes no allegations that PIB administered, raised funds for, or otherwise promoted a "reward" program for terrorists. First, "providing routine financial services to members and associates of terrorist organizations is not so akin to providing a loaded gun to a child as to" constitute an act of international terrorism under the ATA. *Linde*, 882 F.3d at 327. Second, the Complaint lacks any specific factual allegations that PIB knew or intended that the checks it processed for Mr. Salem would be used "in preparation for or in carrying out" any terrorist act. Third, PIB's routine banking services cannot plausibly be the proximate cause of Plaintiffs' injuries, because "the mere provision of 'routine banking services to organizations and individuals said to be affiliated with' terrorists does not necessarily establish causation." *Id.* (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 124 (2d Cir. 2013)). Even if Mr. Salem used funds drawn on his PIB account to "reward" the families of suicide terrorists, and PIB knew of Mr. Salem's intent, PIB's routine processing of checks drawn by Mr. Salem to non-terrorist third parties does not satisfy "the causation element of an ATA claim." *Id.*

### V. The Complaint Fails to State a Claim for Secondary Liability under JASTA

Under JASTA, liability for "aiding and abetting an act of international terrorism requires more than the provision of material support to a designated terrorist organization." *Linde,* 882 F.3d at 329. It also "requires the secondary actor to be 'aware' that, by assisting the principal, it is itself assuming a role in terrorist activities" and that the principal be the one who actually *committed* the terrorist attack. *Id.*; *see also Weiss v. Nat'l Westminster Bank PLC*, 278 F. Supp. 3d 636, 650 (E.D.N.Y. 2017) ("By the plain language of the statute, § 2333(d) does not create liability against a person who aids and abets or conspires with the person who merely authorized (rather than committed) the terrorist act, as Plaintiffs suggest"). Plaintiffs do not plausibly allege that, by providing financial services to Mr. Salem and ALF, PIB itself assumed a role in the antecedent terrorist activities of the attackers whose families subsequently received payments from Mr. Salem or ALF. As noted above, Mr. Salem was acquitted by an Israeli military tribunal because ALF was not designated as a terrorist group. Plaintiffs do not allege that Mr. Salem or ALF "committed such [acts] of international terrorism" that injured Plaintiffs. Nor do they allege that Mr. Salem or ALF were agents of, or front organizations for, any of the FTOs identified in the Complaint. PIB sits too far "down the causal chain" to face secondary liability under JASTA. *See Kemper v. Deutsche Bank AG,* 911 F.3d 383, 389 (7th Cir. 2018).

Squire Patton Boggs (US) LLP

**VIA ECF**

Hon. Eric N. Vitaliano
May 6, 2019

Respectfully submitted,

Squire Patton Boggs (US) LLP

Mitchell R. Berger