OSEN LLC
ATTORNEYS AT LAW
WWW.OSENLAW.COM

2 UNIVERSITY PLAZA, SUITE 402, HACKENSACK, NJ 07601     1441 BROADWAY, SUITE 6022, NEW YORK, NY 10018
T. 201.265.6400   F. 201.265.0303                                                          T.212.354.0111

June 23, 2020

**VIA ECF**
Honorable Eric R. Komitee, U.S.D.J
United States District Court, Eastern District of New York
225 Cadman Plaza East, Brooklyn, N.Y. 11201

      Re:    *Spetner, et al. v. Palestine Investment Bank,* 19-cv-005 (ERK) (RLM)

Dear Judge Komitee:

      Plaintiffs respectfully write to provide a case showing that directing another bank to facilitate funds transfers gives rise to a limited agency relationship. June 17, 2020 Transcript at 33, 35. In *In re Arcapita*, defendant Bahraini banking corporation Tadhamon "conscious[ly] deci[ded] to forgo maintenance of a correspondent account in" New York, using instead another Bahraini bank, Khaleeji Commercial Bank ("Khaleeji"), to receive payments into Khaleeji's correspondent account in New York from another bank, Arcapita. 549 B.R. 56, 70 n.18 (S.D.N.Y. 2016) (another defendant used its own correspondent account in New York for a separate transaction). That did not change the jurisdictional analysis premised on *Licci* as "Tadhamon sought to, and in fact, did take advantage of the United States's dependable and transparent banking system by receiving the funds into a New York account before transferring them to its own account in Bahrain. Because Tadhamon directed the wire transfers to a specifically designated New York account for its own advantage, the receipt of the funds in New York is a 'contact' properly attributed to Tadhamon. *In any case, … Khaleeji acted as Tadhamon's agent when it received the funds, and thus, Khaleeji's receipt of the funds in New York can be imputed to Tadhamon.*" *Id.* (emphasis added).

      The court found that defendants' conduct satisfied *Licci* because their "selection of dollars and their decision to utilize New York's banking system to effectuate the transfer was no less deliberate than LCB's use of New York's banking system in *Licci*," distinguishing *Amigo Food*'s "unauthorized" transfer. *Id.* at 65, 69. Here, PIB chose AJIB in order to access AJIB's accounts in New York to send and receive money, *admittedly* "instructed" AJIB to direct transactions through those accounts to other New York accounts, PIB Br. at 21, and chose to offer ALF and HLF banking services in dollars—"no less deliberate[ly] than LCB" did. *See also* George Decl. ¶¶ 25-26 (PIB demanded payment *via AJIB in New York* (FAC Ex. B) and instructed HLF to do the same (FAC Ex. C)). It also chose to offer Saddam Hussein's terrorism rewards initiative the ability to make payments via dollar-denominated checks knowing that they would be settled in New York.

      While PIB did not negotiate AJIB's (or the PMA's) particular choice of New York correspondent account, *neither did the National Union defendants negotiate or even "ask[] about" the insurance plans they chose to join*—their counterparty BP did *before* they "bought in" to the plans. Pls. Br. at 10-11. Like Khaleeji, AJIB is PIB's agent for receiving and sending funds through New York—at the very least in the jurisdictional context to the extent PIB "delegated" the choice of forum to AJIB (and did not "reject[] the business," *id.*).

Respectfully submitted,

/s/ Gary M. Osen