

Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, D.C. 20037

June 26, 2020

**VIA ECF**

Hon. Eric R. Komitee, U.S.D.J.
U.S. District Court, E.D.N.Y., 225 Cadman Plaza East
Brooklyn, New York 11201

**Re:** *Spetner, et al. v. Palestine Investment Bank*, **Case No. 1:19-cv-00005 (E.D.N.Y.)**

*In re Arcapita*, 549 B.R. 56 (S.D.N.Y. 2016), does not support jurisdiction over PIB. *Arcapita* did not involve offshore book-to-book transfers of U.S. dollars between two foreign banks; did not address or alter the rule that "[a] correspondent bank relationship, standing alone, does not create an agency relationship," *Aaron Ferer & Sons v. Chase Manhattan Bank*, 731 F.2d 112, 122 (2d Cir. 1984); and involved a foreign bank's actual exercise of control over the actions of an in-forum bank—making the in-forum bank the agent of the foreign bank—by expressly requiring the plaintiff to deposit funds into a New York account. "The Banks, not Arcapita, set the terms of each placement transaction, and then presented those terms in an offer to Arcapita. … The Banks designated New York correspondent bank accounts to receive the funds from Arcapita." *Arcapita*, 560 B.R. at 68-69. By contrast here, the uncontested facts are: outside Palestine, PIB conducted USD business exclusively on a book-to-book basis with AJIB in Amman; "PIB never controlled how AJIB processed funds to or through the United States"; "AJIB made its own decisions about whether it would use its own U.S. correspondent banks, and who those correspondents would be"; and any instructions "to process a payment to a U.S. bank or bank account … simply implemented decisions made independently by, and at the express direction of, the PMA, PIB's customer, or the counterparty to the transaction, not by PIB." Aghbar Decl. (Dkt. 41-2), ¶¶ 16, 27-29; Supp. Aghbar Decl. (Dkt. 43-1), ¶¶ 6, 10. The Second Circuit recognizes the widespread legitimate use of offshore book-to-book dollar transactions as PIB used, *Export-Import Bank v. Asia Pulp & Paper Co.*, 609 F.3d 111, 115 (2d Cir. 2010), which was not at issue in *Arcapita*. Instead, plaintiff Arcapita transferred funds from its New York account (at JPMorgan Chase) "to an intermediary account at HSBC Bank in New York maintained by Tadhamon's bank in Bahrain, Khaleeji Commercial Bank" for further "transfer[] … to Tadhamon's Khaleeji Commercial Bank account in Bahrain." Rashdan Decl. (*Arcapita* Dkt. 26-2), ¶ 7. *Arcapita* comports with the *Aaron Ferer* rule that a correspondent-banking relationship "standing alone" does not create an agency relationship, because *Arcapita* involved considerably more, namely the express contract by which Tadhamon required Arcapita to transfer funds to a specific U.S. bank account chosen by Tadhamon. *See* Agreement, First Schedule (*Arcapita* Dkt. 26-2 at 20). Through that express contractual arrangement, Tadhamon exercised "control" over the New York banking arrangements, the *sine qua non* to find that the in-forum receiving bank was Tadhamon's agent. *Compare Arcapita*, 560 B.R. at 70 n. 18 *with Nat'l Union Fire Ins. Co. v. BP Amoco*, 319 F. Supp. 2d 352, 360 (S.D.N.Y. 2004). Importantly, *Arcapita* recognized that Tadhamon "could have received the funds elsewhere" outside New York, but instead "deliberately chose to receive Arcapita's funds … [at] designated correspondent bank accounts in New York … even though they presumably could have performed the Placement transactions without ever directing the funds through New York or anywhere else in the United States." 560 B.R. at 70 & n.17. Judge Daniels thus likened Tadhamon to the bank in *Licci* that "also could have utilized accounts elsewhere in the world." *Id.* at 70. By contrast, PIB made the choice allowed in *Licci* to process its dollar transactions "elsewhere in the world" through offshore book-to-book transactions with AJIB. Any foreseeability by PIB that AJIB would use its own correspondent-bank accounts in New York to engage in related transactions does not equate with PIB control over AJIB, as necessary to make AJIB (and AJIB's US correspondents) PIB's in-forum agents. PIB thus did not purposefully avail itself of the New York banking system. Ultimately, Plaintiffs' view that correspondent banks are each other's agents on a per-transaction basis (Tr. 33:1-21) would obliterate *Aaron Ferer* because, if a correspondent-bank relationship "standing alone" turns correspondents into agents for each transaction, then they are agents for every transaction.

45 Offices in 20 Countries

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities.

Please visit squirepattonboggs.com for more information.

Squire Patton Boggs (US) LLP

**VIA ECF**

Hon. Eric R. Komitee
United States District Court
Eastern District of New York
June 26, 2020

Respectfully submitted,

**Squire Patton Boggs (US) LLP**

*/s/ Gassan A. Baloul*
Gassan A. Baloul
gassan.baloul@squirepb.com
Mitchell R. Berger
mitchell.berger@squirepb.com
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Joseph S. Alonzo
joseph.alonzo@squirepb.com
1211 Avenue of the Americas, 26th Floor
New York, New York 10036
Telephone: (212) 872-9800
Facsimile: (212) 872-9815

*Counsel for Defendant Palestine Investment Bank*

cc: All counsel of record (via ECF)