# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TEMIMA SPETNER, *et al.*,

Plaintiffs,

–against–

PALESTINE INVESTMENT BANK,

Defendant.

No. 19–cv–00005 (EK)(JAM)

**AGREED ORDER REGARDING SEARCH, COLLECTION, AND PRODUCTION OF ESI AND HARD COPY DOCUMENTS**

It is hereby ordered that the terms of this Agreed Order shall apply to the collection and production of hard copy documents, things, and Electronically Stored Information ("ESI") by parties in the above-captioned action.

**1. SEARCH LOCATIONS, TERMS, AND METHODS**

1.1. *Locations and Sources to Search.* The parties agree to search for responsive ESI from locations and/or sources of data within each party's possession, custody, or control.

1.2. *De-NISTing.* Each party will use its best efforts to exclude from collection and production those files with hash values identical to those included in the National Software Reference Library reference data set ("RDS Hash"), a sub-project of the National Institute of Standards and Technology ("NIST"), of known traceable system and application files by using a commercially reasonable hash identification process.

1.3. *Good Faith Identification.* Each party shall identify in good faith all databases and ESI storage locations, including backup systems/tapes, if any, likely to contain information

relevant to the claims and defenses in this litigation during initial disclosures and meet & confer discussions, and update those disclosures as appropriate.

1.4. The parties will meet and confer on search terms for ESI in good faith and agree on mutually agreeable search terms for each discovery request (and all search terms used will be disclosed to the other party).

1.5. The parties will meet and confer and participate in an iterative e-discovery process to evaluate the parties' searches and will discuss in good faith using e-discovery tools like hit reports, as necessary.

## 2. Data Map and IT Infrastructure Disclosure

2.1. *Required Data Map Components*. To the extent a party maintains centralized data infrastructures, each party shall provide a Data Map (as defined in *The Sedona Conference Glossary: eDiscovery and Digital Information Management, Fifth Edition,* Sedona Conf. J., Vol. 21, at 289 (2020), including database documentation such as data dictionaries, schemas, and entity relationship diagrams) of each identified database system identified in paragraph 1.3 within 30 days of the execution of this Protocol, with updates provided within 15 days of any material changes.

## 3. Production Format

3.1. *Directory Structure.* Productions shall have four directories:

3.1.1. IMAGES—Document images (TIFF format);

3.1.2. DATA—Metadata load files (.dat) and image cross-reference files (.opt);

3.1.3. TEXT—Extracted text from native files and OCR text from imaged documents, including all redacted documents; and

3.1.4. NATIVES—Original native files.

3.1.5. Load Files. Each production shall include comma-delimited load files in standard format:

3.1.5.1. The .dat file shall contain all fielded data for the production, including the beginning bates number for each record, the relative path to the text files for each record, and, for Native Files, the relative path to the native file for each record.

3.1.5.2. The .opt files provide image cross reference files for all TIFF images (including native placeholders and placeholder docs for family members withheld for privilege or work-product protection) and shall identify document breaks for an image.

3.2. *OCR.* OCR or Extracted Text files shall be document-level text files (for example, a single extracted text file per document).

3.3. *Image Files.*

3.3.1. Unless otherwise specified in this Protocol, Paper and ESI documents must be produced in single page TIFF format with image resolution of at least 300 dots per inch ("DPI")

3.3.2. Each TIFF image shall be named after the document production number assigned to the TIFF image. Each page produced shall be labeled with a unique production number ("Bates number"). In addition, the confidentiality designation, if any, shall appear on the TIFF image. To the extent possible, the Bates number and the confidentiality designation shall appear in manners that do not obscure anything present in the TIFF image.

3.3.3. Each TIFF file of an ESI document must be created directly from the original native electronic document and must preserve the integrity of the underlying ESI.

3.4. *Native Files.*

3.4.1. The parties shall produce Microsoft Excel spreadsheets, Microsoft Access databases, Microsoft PowerPoint files (or their equivalent), audio and video ESI in Native Format, and Microsoft Word documents for which the Metadata indicates there are comments, unless such materials contain privileged information. Additionally, the parties will meet and confer to discuss in good faith requests from the receiving party for the production of any other document in Native Format.

3.4.2. Each native file shall be accompanied by a TIFF placeholder and named to match the endorsed bates number on the corresponding TIFF image placeholder page.

3.5. *Redacted or Withheld Documents.*

3.5.1. Any redacted material must be clearly labeled as having been redacted.

3.5.2. The redacted text shall not be included in a redacted document's text file. Where a responsive document contains both redacted and nonredacted content, the producing party shall produce the remainder of the non-redacted portions of the document unless otherwise agreed to by the parties.

3.5.3. Redacted versions of documents, whether required to be produced in Native Format or TIFF format, may be produced as TIFF image files and OCR text in lieu of Extracted Text.

3.6. *Families of Documents.* The parties anticipate they will encounter "families" of documents, which may include a "parent" email or document and one or more "child" attachments. Where any child document is responsive, then the parent email or document must also be marked responsive.

3.7. *Extracted Text and OCR.*

3.7.1. The production shall include searchable text files (".txt" file extension) for all of the textual production documents to the extent reasonably possible.

3.7.2. Such text files shall use the Unicode text format.

3.7.3. For documents maintained by the producing party in image or hard copy (paper) form, the producing party shall create searchable text files using Optical Character Recognition ("OCR") technology.

3.7.4. For documents maintained by the party in electronic form, the producing party should use the Extracted Text of the "native" file whenever possible.

3.7.5. To the extent a document is redacted or Extracted Text is missing or of poor quality, the party should create searchable text files using OCR technology.

3.7.6. The searchable text files should be created on a document level and be named to correspond to the first page bates number of the corresponding document being produced (e.g. ABC000001.txt).

3.8. *Foreign Language Documents.* To the extent that Documents contain languages other than English, in whole or in part, the responding party shall produce each such Document in the original language or languages in which it was written when collected.

3.9. *De-duplication.*

3.9.1. Exact duplicate documents can be globally de-duplicated across all Custodians only where there is bit-for-bit identity of the document content and Metadata with exact Hash Value matches determined by MD5, SHA–1, or SHA26 algorithms.

3.9.2. A producing party, in the first instance, may not use email thread suppression to exclude email from its production. However, the producing party may use email threading only for purposes of efficiency in reviewing documents.

3.10. *Load Files.*

3.10.1. The parties agree to provide Load Files with the following universal fields:

| Exemplary Field Name | Description |
|---|---|
| BegBates | The beginning Bates number of a document. |
| EndBates | The ending Bates number of a document. |
| BegAttach | First page number of the parent document of the family. |
| EndAttach | Last page number of the last child attachment of the family. |
| PgCount | The number of pages comprising a document produced in TIFF format file. |
| Custodian | The Custodian from whom each document was retrieved, subject to section 3.11.1.1 below. |
| ProdVolume | Identifies the production media deliverable. |
| Record Type | Identifies the type of Document or ESI ("E-mail," "Hard Copy," "Spreadsheet," etc.). |
| Redacted | Indicate whether the document has redactions (Y/N). |
| Text File | Location of the text file, relative to the root of the volume. |
| Native File | For documents produced natively, a link to the location of the native file, relative to the root of the volume. |
| All Custodians | When documents have been globally deduplicated, the names of the other Custodians who also possessed the document. |
| Confidentiality | The confidentiality designation, if any. |

3.10.2. The parties agree to provide the "Custodian" field for documents collected from an individual (including ESI from the individual's email systems, network drives or cloud storage accounts, cell phones and other mobile or tablet devices, and desktop and laptop computers, and other sources) where the Custodian is reasonably known.

3.10.3. For documents collected from shared locations (*e.g.*, network drives or cloud storage systems with multiple users), databases, and systems that

incorporate databases, the "Custodian" field shall indicate the name of the shared location or database. The parties will meet and confer in good faith to discuss requests for additional information as to these documents.

3.11. *Metadata.*

3.11.1. For all ESI, regardless of whether it is produced in TIFF format file or as a native file, the producing party will produce a Load File containing Metadata.

3.11.2. To the extent they are reasonably available, the Metadata values that are to be extracted and produced in the Load Files are outlined below:

| **Metadata from Email ESI Files** | |
|---|---|
| **Exemplary Field Name** | **Description** |
| From | The person who sent the email. |
| To | The addressee(s) of the email. |
| CC | The person(s) to whom a copy of the email was addressed. |
| BCC | The person(s) to whom a blind copy of the email was addressed. |
| Subject | The subject of the email. |
| Received Date | The date the email was received by the recipient. |
| Received Time | The time the email was received by the recipient. |
| Sent Date | The date the email was sent. |
| Sent Time | The time the email was sent. |
| Page Count | Number of printed pages in the document. |
| MD5 Hash | The MD5 hash code value for the email. |

| **Metadata from Non-Email ESI Files** | |
|---|---|
| **Exemplary Field Name** | **Description** |
| File Name | The file name of an electronic document. |
| File Author | The author of an electronic document. |
| File Created Date/Time | The date/time an electronic document was created. |
| File Modified Date/Time | The date/time an electronic document was last modified. |
| Last Saved By | Last saved/modified by property of a document. |
| Native Path | Relative file path to produced Native file (named per BegBates number). |
| File Extension | The file extension of an electronic document. |
| Page Count | Number of printed pages in the document. |
| File Type | Application type. |
| MD5 Hash | The MD5 hash code value for an electronic document. |

3.12. *Attachments.* For all documents that contain an attachment or attachments, the following fields should be produced as part of the Metadata Load File to provide the parent/child or parent/sibling relationship.

| Exemplary Field Name | Description |
|---|---|
| BegAttach | First page number of the parent document of the family. |
| EndAttach | Last page number of the last child attachment of the family. |
| AttachRange | Bates Number of the first page of the parent item to the Bates Number of the last page of the last attachment "child" item |
| ParentID | Indicates the Parent ID for an attachment or embedded document. The parent document ID field should be set for all attachments (including attachments that are emails) but should not be set for parents. |

## 4. Media for Delivery of Production

4.1. *Production Delivery Methods.* Productions shall be delivered using one of the following secure methods:

4.1.1. Secure File Transfer Protocol ("SFTP")—Preferred method for large productions;

4.1.2. Cloud-based secure file sharing—Enterprise-grade platforms (For example Box, OneDrive, Logikull, Relativity, ShareFile) with audit logging and encryption; or

4.1.3. Physical media—Hard drives, USB drives, or optical media (CD/DVD) only if electronic transfer is impractical due to file size or technical constraints.

4.1.4. Other reasonable methods including email, as the case may be.

4.2. *Platform Compatibility.* All productions must be accessible and viewable using standard Windows-based and Mac-based document review platforms without requiring specialized software beyond industry-standard e-discovery tools.

## 5. Privilege Logs

5.1. *Federal Rule Compliance*. The parties shall exchange privilege logs as required by Federal Rule of Civil Procedure 26(b)(5)(A), this Court's Local Rules, and the Protective Order, describing withheld documents "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii).

5.2. *Required Privilege Log Information.* Each privilege log entry (or categorical grouping) shall include:

5.2.1. Control/Bates Number—Unique identifier or Bates range for withheld document(s);

5.2.2. Date—Date of document or date range for category;

5.2.3. Author(s) Person(s) who created/sent the document;

5.2.4. Recipient(s)—Person(s) who received the document;

5.2.5. CC/BCC—Copied recipients (for emails);

5.2.6. Document Type—Email, memo, letter, spreadsheet, etc.;

5.2.7. Subject Matter—General description without revealing privileged content

5.2.8. Privilege(s) Asserted—Attorney-client privilege, work product, bank examiner's privilege, etc.; and

5.2.9. Custodian—Person from whose files document was collected

5.3. *Sufficient Detail Standard*. Descriptions must provide enough information, under controlling law, to allow the respective party to assess whether the documents are privileged while not revealing the privileged content itself.

5.4. *Timing and Supplementation.*

5.4.1. Privilege logs shall be produced on a rolling basis within 45 days of each document production to which they relate, unless otherwise agreed by the parties or ordered by the Court.

5.4.2. If additional privileged documents are identified after initial logging, supplemental privilege logs shall be produced within 30 days of identification.

5.5. *Challenges to Log Sufficiency.*

5.5.1. If a receiving party believes a privilege log lacks sufficient detail to assess privilege claims, the parties shall meet and confer before filing a motion to compel or a motion for protective order.

5.5.2. The producing party may be required by the Court to supplement the log with additional detail or produce documents for in camera review.

5.6. *Clawback and Inadvertent Production.*

5.6.1. The parties' rights and obligations regarding inadvertent production of privileged materials are governed by the Protective Order and Federal Rule of Evidence 502(d).

5.6.2. Documents subject to valid clawback under the Protective Order need not be logged if timely clawed back, unless the receiving party challenges the privilege claim.

**Agreed upon by:**

/s/ Michael Radine
Gary M. Osen, Esq.
Michael Radine, Esq.
Aaron Schlanger, Esq.
OSEN LLC
190 Moore Street, Suite 272
Hackensack, New Jersey 07601
(201) 265-6400

*Attorneys for Plaintiffs*

/s/ Gassan A. Baloul
Gassan A. Baloul
Mitchell R. Berger
Squire Patton Boggs (US) LLP
2550 M Street NW
Washington, DC 20037
Tel.: 202-457-6000

Joseph S. Alonzo
Squire Patton Boggs (US) LLP
1120 Avenue of the Americas, 13th Floor
New York, NY 10036
Tel.: 212-872-9800

*Attorneys for Defendant*

**SO ORDERED**.

Dated: Brooklyn, New York
_________ ___, 2025

________________________________
U.S.M.J.